IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA            )
                                    )
                                    )      NO. 3:10-cr-00065-1
v.                                  )
                                    )      JUDGE RICHARDSON
                                    )
QUINCY MAURICE FUQUA                )

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Sentence Reduction Under 18 U.S.C. §

3582(c)(1)(A) (Doc. No. 507, "Motion"). Via the Motion, Defendant seeks a reduction of his 248-

month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"),

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and

around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his

specific health profile, satisfies the requirement of "extraordinary and compelling reasons"

necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that

compassionate release is otherwise appropriate in his case. The Government has filed a response

in opposition (Doc. No. 514, "Response"), arguing that the Motion should be denied because

consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate

release.

---

[1] Motions like the instant Motion are generally known as ones for "compassionate release," and Defendant's
requested relief appropriately can be referred to and conceived of as "compassionate release" or "sentence
modification" (or "sentence reduction"). *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121,
at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence
modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v.
McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

On March 31, 2010, Defendant and two co-defendants were charged in a five-count indictment. (Doc. No. 22). Defendant was charged with three counts: Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count One); Discharging a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Four); and Possession with Intent to Distribute Marijuana, in violation of 18 U.S.C. §§ 841(a)(1) and 2 (Count Five). (*Id*.).

After a five-day jury trial, Defendant was convicted on all three counts. (Doc. No. 258). On January 14, 2014, United States District Judge Todd Campbell sentenced Defendant to serve 248 months of imprisonment followed by 4 years of supervised release. (Doc. No. 366).[2] Defendant has been serving his sentence at USP Atlanta. According to BOP, Defendant's release date is August 12, 2029. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Mar. 2, 2021).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for

---

[2] The undersigned took no part in the trial or sentencing of Defendant and indeed was at no point assigned to Defendant's case until the instant Motion was filed.

[3] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—

compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980

F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the

compassionate release decision is discretionary, not mandatory."). In order to grant such a

defendant-filed motion, however, a court must find that the so-called "exhaustion requirements"

have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to

appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf

or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a

motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v.*

*Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the

exhaustion requirements of Section 3582(c)(1)(A)).[4]

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. §

3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate

release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps

of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[
> ]" whether "extraordinary and compelling reasons warrant" a sentence reduction.
> 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such
> a reduction is consistent with applicable policy statements issued by the Sentencing
> Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy
> statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. §
> 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts
> must "follow the Commission's instructions in [§ 1B1.13] to determine the
> prisoner's eligibility for a sentence modification and the extent of the reduction
> authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three,
> "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors

---

(1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

[4] In this case, the Government concedes that Defendant has exhausted his administrative remedies. (Doc. No. 366 at 1).

and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id.*

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id.* The court noted that this is a question that has "sharply divided the courts," *id.* (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[5] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.*

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in

---

[5] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

*Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[6] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>>> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>>> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
>> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
>> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

---

[6] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

ANALYSIS

I.      EXTRAORDINARY AND COMPELLING REASONS

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

Defendant contends that his underling medical conditions (obesity, chronic kidney disease, and prediabetes) combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for his release. (Doc. No. 507-1 at 2).

In its Response, the Government states that Defendant's medical records show that he is obese and that obesity is "a condition that the CDC has confirmed will cause him to face an increased risk of severe illness from COVID-19." (Doc. No. 514 at 7). Thus, the Government concedes that Defendant has met his burden to demonstrate extraordinary and compelling reasons. Despite the Government's concession, the Court need not decide whether Defendant has met his burden to demonstrate that extraordinary and compelling reasons exists, because the Court below decides that compassionate release is not available to Defendant even assuming *arguendo* that he is able to demonstrate extraordinary and compelling reasons. [7]

---

[7] *Jones* suggests that a district court has the discretion to assume *arguendo* that extraordinary and compelling reasons exist and then turn to the Section 3553(a) factors, inasmuch as *Jones* affirmed a district court that did exactly that. *See Jones*, 980 F.3d at 1108 ("Thus, the district judge in Jones's case permissibly assumed for the sake of

II.    SECTION 3553(a) FACTORS

The Government argues that Defendant's Motion should be denied because consideration of the Section 3553(a) factors militates against granting compassionate release to Defendant. (Doc. No. 514 at 8-10). The Court agrees, as reflected by the below analysis of factors. *See Jones*, 980 F.3d at 1112-13 (explaining that the district court must supply specific factual reasons in its consideration of the Section 3553(a) factors).

*The nature and circumstances of the offense* cut against compassionate release. During the instant offenses of conviction, Defendant possessed a firearm while he was in possession of distribution quantities of drugs. (PSR at ¶ 7). As this Court has noted before, the mix of firearms and narcotics is a particularly dangerous combination. *See United States v. Sanders*, No. 3:12-CR-00183, 2020 WL 6460224, at *7 (M.D. Tenn. Nov. 3, 2020) ("Defendant's underlying offense—possession of a firearm during a drug trafficking crime—involves the very dangerous mix of drugs and firearms."). Such a dangerous combination, in the Court's view, does not support a shortened sentence. Furthermore, Defendant discharged the firearm in the direction of a law enforcement officer when law enforcement entered his residence to execute a search warrant. (PSR at ¶ 4). Such act weighs heavily in the Court's conclusion that the nature and circumstances of the underlying offense weigh against granting release. Furthermore, due to his prior felony, Defendant was prohibited from possessing firearms, yet did anyway, evidencing his recidivism. *See United States*

---

argument that extraordinary and compelling circumstances existed[.]").  This appears to be an approach commonly taken by courts. *E.g.*, *United States v. Singleton*, No. CR 5:13-8-KKC, 2021 WL 614927, at *2 (E.D. Ky. Feb. 17, 2021) ("For purposes of this motion, the Court will assume that Singleton's health conditions amidst the COVID-19 pandemic in a prison setting present extraordinary and compelling circumstances that would warrant a sentence reduction. Even assuming, however, that extraordinary and compelling circumstances do exist that warrant a sentence reduction, the Court must still consider whether 'the factors set forth in section 3553(a) to the extent that they are applicable' support the requested sentence reduction.").

*v. Reed*, No. RDB-07-0470, 2020 WL 4732127, at *2 (D. Md. Aug. 14, 2020) ("[P]ossession of a firearm by a prohibited person, is in itself a serious crime and is indicative of [Defendant's] recidivism."). Relatedly, it tends to indicate a risk that Defendant would not comply with restrictions imposed on his conduct; which is vital because compassionate release would make sense only to the extent Defendant after release would comply with restrictions imposed by law, conditions of supervised release, etc. Based on these facts, the Court finds that the nature and circumstances of Defendant's underlying offense weigh against granting compassionate release.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release.

The Government argues that this factor weighs against granting Defendant compassionate release because Defendant's criminal history demonstrates that he "never learned anything from his experiences in the criminal justice system." (Doc. No. 514 at 9). Defendant first pled guilty to Simple Possession of Marijuana at the age of 22. (PSR at ¶ 37). Defendant again pled guilty to two charges of Simple Possession of Marijuana in his late twenties. (PSR at ¶¶ 38-39). At the age of 30, Defendant was convicted of Resisting Arrest and later during a separate incident that same year, pled guilty to Possession of Marijuana for Resale. (PSR at ¶ 41). During commission of the instant offenses, Defendant was on probation for the Possession of Marijuana for Resale conviction. (PSR at ¶ 40, 43). The previously described conduct placed Defendant in a criminal history category of IV at the time of his sentencing in this case.

The Court finds that the history and characteristics of Defendant, and the need to protect the public from further crimes of Defendant, weigh against granting compassionate release. The Court does not presume this merely because Defendant is currently incarcerated for serious offenses. The inquiry is more comprehensive than that, involving most significantly a review of

Defendant's entire criminal history. Combined with his current offense, this criminal record, which includes criminal conduct that occurred time and time again—without abating even after numerous encounters with the criminal justice system—prevents the Court from concluding that Defendant would not pose a danger to the community if released. Ultimately, Defendant's criminal record demonstrates his repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism. Accordingly, the Court concludes that these things weigh against granting compassionate release.

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's medical need to avoid a COVID-19 infection and, failing that, to avoid a poor outcome from a COVID-19 infection.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone without his medical condition. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[8] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to

---

[8] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; the extent to which COVID-19 may be transmitted via contact with inanimate surfaces; and whether an effective vaccine could be rolled out during calendar year 2020.

COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at USP Atlanta, as there are currently 27 active COVID-19 cases in the facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Mar. 2, 2021). The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, the Court would merely be speculating as to the extent of the risk of infection at USP Atlanta and as to the likelihood of a bad outcome upon infection. For another thing, to say the least, it is not like there in no substantial risk of infection outside of BOP custody; COVID-19 cases continue to occur across the United States, including Davidson County, Tennessee (where Defendant proposes to reside), which has experienced an average of 121.8 new cases reported per day over the last fourteen days. *See* Tenn. Dept. of Health, COVID-19 County Data Snapshot, https://www.tn.gov/health/cedep/ncov/data/county-data-snapshot.html (last accessed Mar. 2, 2021). And as is also a matter of public record, these cases have accrued despite substantial steps by both individuals and government authorities to keep the infection rate down.

To the extent that the pandemic seems to be abating at least somewhat[9] (perhaps due to ongoing vaccination and/or a beginning of a semblance of "herd immunity"), this actually hurts Defendant's position. Any attenuation of the threat of COVID-19 generally reasonably can be

---

[9] *See Coronavirus Case Count*, Washington Post, https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/?itid=lk_inline_manual_3 (last accessed Mar. 3, 2021).

associated with attenuation of the threat of COVID-19 at USP Atlanta, which is of course the very basis for Defendant's request for compassionate release.

Additionally, given Defendant's history of criminal activity (including his violation of state probation that resulting from the conduct underlying the instant offenses of conviction), Defendant unfortunately has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital because the consensus is that decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing.

Further, BOP is working diligently to distribute the COVID-19 vaccine in its facilities, with 61,798 total vaccine doses already administered to BOP staff and inmates. *See COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Mar. 3, 2021). Specifically, USP Atlanta, where Defendant is incarcerated, has inoculated 139 staff members and 162 inmates as of today's date. *Id*. Thus, Defendant, will eventually be offered (if he has not already) the vaccine while incarcerated that will reduce his risk associated with COVID-19. For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

*The sentencing guidelines and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* do not support compassionate release. The sentencing court found that the guideline range for Defendant was 188 to 235 months. (Doc. No. 370 at 105). The Court sentenced Defendant to serve 248 months of imprisonment. According to the BOP, Defendant has roughly 101 months of his sentence left to serve. *See* Federal Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last

accessed Mar. 2, 2021) (listing Defendant's projected release date as August 12, 2029). Although

it is unclear for multiple reasons actually how much time Defendant has served that is credited to

this sentence, at the very most it would be since February 25, 2010, meaning a total of just a little

more than 132 months.[10] With 132 months served, and 101 months remaining (which would reflect

a sentence reduced somewhat based on credit for good-time served), the revised sentence requested

by Defendant would amount to less than 57 percent of his original sentence even as reduced based

on good-time served; it would amount to only roughly 53 percent of his original sentence without

accounting for any reduction for good-time served.

Relatedly, the modified sentence of 132 months Defendant now seeks would constitute

roughly a 30 percent downward variance from the bottom of his guideline range. This is

problematic for Defendant because the Section 3553(a) factors do not tend to support such a

substantial variance, even for a court that properly does not presume that a sentence should be

imposed within the guideline range.

In summary, this sentence would represent not only a significant variance downward from

his guideline range, but also a major reduction of his (above-guideline) sentence as originally

---

[10] The Court is not privy to how BOP calculated this release date, including whether BOP accounted for expected credit for good-time served that could reduce the total sentence to be served as much as 15 percent, *i.e.*, down to 211 months. The Court also does not know for certain the date on which Defendant began accruing credit on his federal sentence. Without belaboring the point, the Court will note three possibilities: (a) February 25, 2010, when Defendant was arrested and detained by state authorities on charges (which may or may not have been dismissed thereafter) based on conduct comprising the instant offense of conviction (PSR at 1); (b) May 25, 2010, the date Defendant was transferred to federal custody, (*id.*), and the date from which Defendant's criminal judgment recommends he receive sentencing credit (Doc. No. 366 at 2); or (3) December 13, 2011, the date of expiration of Defendant's sentence on a state probation violation (which began running on March 30, 2010) based on the conduct comprising the instant offenses of conviction (PSR at ¶ 40).The Court suspects that the last of these may be the date from which Defendant has been accruing sentencing credit in this case, because until that date it appears he was accruing credit towards his state (probation violation) sentence and not his federal sentence. Moreover, if sentencing credit began on that date, Defendant's current projected release date would (under the Court's calculations) align very closely with a release date calculated based on the maximum 15 percent credit for good time served, *i.e.*, a reduction from 248 months to approximately 211 months to serve. But for present purposes, to err in Defendant's favor in its analysis, the Court will assume the earliest date, February 25, 2010, is when Defendant began accruing credit on his federal sentence.

imposed. And these fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 978 F.3d at 1008 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence" and because "the court had already varied downward" by one-sixth the bottom of the guideline range). Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines sentences in general, the Court can (and in this instance does) treat such a large requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served nowhere near all of his sentence can weigh against Defendant not only on this factor, but also on other factors. *See Ruffin*, 978 F.3d at 1008 ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 980 F.3d at 1115 (affirming the district court's denial of the defendant's compassionate release motion where the district court examined the Section 3553(a) factors and reasoned that the factors weighed against granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

Additionally, the Court cannot say that requested reduction of the Court's original sentence would fully reflect the seriousness of the offense Defendant committed, provide a just punishment for his conduct, and promote respect for the law. For those reasons, the Court finds that the Section 3553(a) factors also weigh in favor of denying Defendant's Motion.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 507) is **DENIED**.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE